Howard A. Zeller, J.
The composition of the Board of Supervisors of Cortland County was declared unconstitutional and invalid by a previous decision of this court. (66 Misc 2d 108.) The board was directed to adopt a valid plan of apportionment in conformity with the ‘ ‘ one man, one vote ’ ’ concept. A plan designated Local Law number 7 of 1971 was adopted by the Board of Supervisors. On motion of plaintiff, that plan was declared invalid and unconstitutional and the board again was directed to adopt by local law a plan of apportionment meeting constitutional requirements. The Board of Supervisors thereafter adopted Local Law number 2 of 1972 which is now before the court for consideration as to its constitutional validity.
The plan provides for 19 legislative districts, 8 of which are within .the City of Cortland. . Rural towns with small populations are grouped to form legislative districts; towns with larger populations and somewhat suburban in character are divided to comprise legislative districts. For instance, District 3 consists of the Towns of Taylor, Freetown, Cincinnatus and Willet while District 11 includes about one third of the Town of Homer. The districts vary in population from 2,140 to 2,716. If each county legislator had one vote the plan would not meet acceptable standards because of the deviation from population equality among the districts.
However, the plan assigns to each county legislator weighted votes which also differ depending upon whether the matter before the County Legislature requires for passage a majority vote, a two-thirds vote or a three-fifths vote. The weighted votes are as follows:
DISTRICT MAJORITY TWO-THIRDS THREE-EIFTHS
1 24 31 31
2 25 33 33
3 31 38 40
4 22 29 28
5 25 33 32
6 25 32 32
7 27 36 35
8 25 33 32
*844 9 20 25 26
10 19 24 25
11 18 23 25
12 24 32 32
13 26 34 34
14 26 34 33
15 25 32 32
16 25 32 32
17 24 31 31
18 25 33 33
19 24 33 32
Totals 460 598 598
“ Ideally, in any weighted voting plan, it should be mathematically possible for every member of the legislative body to cast the decisive vote on legislation in the same ratio which the population of his constituency bears to the total population. Only then would a member representing 5% of the population have, at least in theory, the same voting power (5%) under a weighted voting plan as he would have in a legislative body which did not use weighted voting — e.g., as a member of a 20-member body with each member entitled to cast a single vote. This is what is meant by the one man-one vote principle as applied to weighted voting plans for municipal governments. A legislator’s voting power, measured by the mathematical possibility of his casting a decisive vote, must approximate the power he would have in a legislative body which did not employ weighted voting. ’ ’ (Iannucci v. Board of Supervisors, 20 N Y 2d 244, 252.)
Ordinarily, a weighted voting plan applicable to a simple majority vote of the County Legislature will not comply with acceptable standards when matters need a two-thirds or three-fifths vote for affirmative action. A legislator’s voting power will differ when the votes needed for affirmative action are increased above a simple majority. Hence, the board’s plan assigns different voting weights for each type of voting situation.
The board’s present plan has been analyzed with the use of a computer by Lee Papayanopoulos, a consulting mathematician and computer scientist. He testified that the disparity of effective voting power and the actual percentage of population between districts is less than 2% under the board’s plan. This is so whether a majority, a two-thirds or a three-fifths vote is needed. This 2% deviation is not excessive.
The board’s plan is unique. It combines some of the advantages of straight districting and weighted voting. It unites the *845 smaller towns possessing similarity of interests into legislative districts; it divides the two larger towns into legislative districts. The city’s boundary is not pierced. It creates legislative districts much closer in population than if weighted voting were used on the basis of existing towns and city wards in which populations vary from 493 to 7,469.
The Municipal Home Buie Law gives legislative sanction to apportionment by a board of supervisors and sets forth some standards. One of these requires “Adjacent representation areas in the same town or city shall not contain a greater excess in population than five per cent of a full ratio for each representative. ” (Municipal Home Buie Law, § 10, subd. 1, par. a, cl. [13], subcl. [ii].) The phrase “ full ratio for each representative ’ ’ is not defined in the statute. Plaintiff suggests that ‘ ‘ a full ratio for each representative ” is a figure arrived at by dividing the population of the county (45,894) by the number of districts (19). This definition is reasonable and is accepted. Using that definition, the “5% rule ” requires that no legislative district in the City of Cortland or in the Town of Cortlandville or in the Town of Homer may exceed an adjoining district in the same town or city by 121 persons, i.e. 45,894 divided by 19' multiplied by 5%. No district in the city or in said two towns does exceed an adjacent district within the city or within the same town by more than 121 persons. The board’s plan complies with the “5% rule. ”
Local Law 2 of 1972 is constitutionally valid and should be given judicial approval. The plan now should be submitted to a referendum.
Plaintiff has submitted a multi-member district plan which also appears to meet constitutional standards. However, a plan meeting constitutional standards submitted by the representative body of the county takes precedence over plaintiff’s plan. Hence, plaintiff’s motion to impose his plan upon the County of Cortland should be denied.